USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/03/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GEORGE ABDELSAYED,

                                 Plaintiff,

           -against-

NEW YORK UNIVERSITY, NYU
LANGONE MEDICAL CENTER, NYU
SCHOOL OF MEDICINE, & NYU
LANGONE HOSPITAL-BROOKLYN F/K/A
NYU LUTHERAN MEDICAL CENTER,

                                 Defendants.
-----------------------------------------------------------------X

**OPINION & ORDER
ON PLAINTIFF'S MOTION FOR A
PROTECTIVE ORDER
17-CV-9606 (VSB) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      This is an employment action in which Plaintiff claims he was discriminated against because of a disability in violation of the New York State and City Human Rights Law when Defendants refused his request for an accommodation and terminated his employment. Plaintiff also claims breach of his employment contract. Presently before the Court is Defendants' motion (ECF No. 51) for authorization to issue three subpoenas to entities that employed or offered employment to Plaintiff after he left Defendants' employ. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

**Background**

      Plaintiff Dr. George Abdelsayed was a Section Chief of Gastroenterology at Defendant New York University Langone Medical Center ("NYU") from September 1, 2016 through October 17, 2017. In March 2017, Plaintiff began experiencing pain in both arms and muscle weakness in his left arm due to nerve root compression in his spinal cord. His back condition also caused

1

pain in both legs with prolonged standing or walking.  That same month, he elected to have a surgical procedure on his back to relieve his pain.  Unfortunately, the procedure did not work, and Dr. Abdelsayed continued to experience pain.  He then began a course of physical therapy to address the problem.  Altogether, Plaintiff was absent from work from March 2017 through late September 2017 in connection with the treatment he received for his back.

In late September, Plaintiff's doctor cleared him to return to work with some limitations.  In particular, Plaintiff requested three accommodations recommended by his doctor:  (1) "[a] seating arrangement should be available for prolonged procedures, such as those lasting greater than 20-30 minutes; (2) Dr. Abdelsayed cannot perform any procedures that are inherently long and require the use of heavy equipment such as lead apron; and (3) Floor teaching and work rounds should be ideally performed at a central station where seats are available."  (*See* ECF No. 1 at 5.)  Defendants informed Dr. Abdelsayad that they could not provide the requested accommodations and terminated his employment effective October 17, 2019 on the grounds that he could not perform essential functions of his position.  The parties dispute whether Defendants engaged in an appropriate interactive process concerning the reasonableness of the requested accommodations prior to terminating Plaintiff's employment.

Following his termination, Plaintiff sought other employment.  Within a relatively short time after leaving NYU, Plaintiff was offered employment at Wyckoff Heights Medical Center ("Wyckoff") as Director of Gastroenterology, but that offer was withdrawn.  Plaintiff produced the job description and offer letter from Wyckoff, which indicates that the job had similar duties to the job Plaintiff held at NYU.  Plaintiff requested the same accommodations from Wyckoff as he requested from NYU.  Plaintiff  testified that he did not know why the offer was withdrawn.

His attorney elaborated in Plaintiff's opposition to the subpoenas that Wyckoff told Plaintiff the reasons for the revocation of the job offer were unrelated to Plaintiff's medical condition or any request for accommodation.

In or about May 2018, Plaintiff obtained a job as a Staff Physician for Richmond University Medical Center ("RUMC"), where he still works. Plaintiff does not perform the same type of work at RUMC as he did at NYU. As a result, Plaintiff represents that he does not need and did not request any accommodations in connection with his work at RUMC. Prior to obtaining the RUMC job, Plaintiff worked for about 6 weeks for Our Lady of Lourdes Medical Center ("OLLMC"), a short-term job he obtained through a staffing agency. He did not perform the same type of work there as he did at NYU. Plaintiff testified that he did not request or need any accommodations from OLLMC due to the different nature of work there.

### The Proposed Subpoenas

Defendants seek to subpoena all three medical centers referenced above to obtain the following information:

- Dr. Abdelsayed's job restrictions for the positions,
- Dr. Abdelsayed's medical conditions and how those conditions affected his ability to perform the positions,
- Dr. Abdelsayed's ability to perform the job duties for the positions including general and advanced endoscopies,
- Dr. Abdelsayed's requested accommodations for the positions,
- Dr. Abdelsayed's *representations* about his ability to perform the job duties for the positions and requested accommodations for the positions,
- Dr. Abdelsayed's pre-employment medical clearance process for the positions and whether he passed that process,
- Dr. Abdelsayed's compensation and payroll records essential to calculating his lost wages,
- The reasons why Dr. Abdelsayed did not receive a permanent assignment and/or additional assignments from OLLMC,
- And, the reasons why Wyckoff withdrew its offer of employment.

Plaintiff objects to the proposed subpoenas on privacy grounds and based on case law holding that subpoenas on current employers should be used only as a last resort due to the direct negative effect that disclosure of disputes with past employers can have on present employment.  Plaintiff also objects to the proposed subpoenas as (1) overbroad insofar as they seek information that is not relevant to the claims and defenses in this action and (2) not proportional to the needs of the case as the subpoenas are unnecessarily redundant insofar as Plaintiff already has provided deposition testimony and documents on the topics.

Defendants also seek attorneys' fees and costs incurred in connection with the instant dispute, which Plaintiff opposes.

**Discussion**

Under Federal Rule of Civil Procedure 26(b)(1) ("Rule 26(b)(1)"), a party may seek any discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party may seek a protective order if the discovery sought would subject the party to annoyance, embarrassment, oppression or undue burden or expense.  Fed. R. Civ. P. 26(c).  In discrimination cases such as this, whether a defendant employer can subpoena employment records from entities that employed the plaintiff subsequent to his or her employment with the defendant is often an issue brought to courts for resolution.  Courts within the Second Circuit have recognized that drawing a present employer into a dispute involving a plaintiff's prior employer can have

negative effects on the plaintiff's employment. For this reason, they typically require relevant information about subsequent employment to be obtained through less intrusive means; usually, through the plaintiff. *See, e.g.*, *Morales v. Pepsi Co.*, 16-cv-6597L, 2018 WL 3853390 (W.D.N.Y. Aug. 14, 2018); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 69 (E.D.N.Y. 2010). However, the outcome of disputes on the permissibility and scope of this type of subpoena depends on the particular claims and issues in the case, whether the subpoena targets a current or former employer, and the nature of the job, industry and impact of the subpoena on the plaintiff's employment. *See, e.g.*, *Delorenzo Spartan Sec. Servs., Inc.*, 2018 WL 3979597 (S.D.N.Y. 2018) (narrowing, in constructive discharge case, scope of subpoena but permitting request for documents indicating what plaintiff had represented about the reason for his termination from the defendant); *Morales*, 2018 WL 3854490, at *3 (denying defendant's request for order compelling plaintiff to execute an authorization for release of information from subsequent employers on ground that information should be sought first from plaintiff); *Roth v. Cty. of Nassau,* 2017 WL 75753, at *5-6 (E.D.N.Y 2017) (holding that, where plaintiff relied on hiring process of subsequent employer to support claim against defendant, plaintiff made certain employment application records relevant and open to discovery; however, narrowly tailoring the subpoenas and refusing to allow the defendants to blanketly subpoena all the documents pertaining to the hiring process and other employment-related documents and requiring defendants to use less intrusive means); *Warnke*, 265 F.R.D. at 69-70 (granting motion to quash subpoena on plaintiff's current employer and another of her employers after she left the defendant's employ because information sought was duplicative insofar as the plaintiff had produced some of the information and other information sought had no bearing on the suit and was disproportionate to the needs of the

case); *Mirkin v. Winston Res.*, LLC, 2008 WL 4861840, at *1 (S.D.N.Y. 2008) (permitting deposition subpoena, pre-2015 Amendment to the Federal Rules of Civil Procedure, on supervisor from subsequent employer because he might have information about plaintiff's specific job skills and performance, was no longer plaintiff's employer or helping place plaintiff in a job, could be bound by the protective order in the case, and any alleged embarrassment was minimal since the fact of plaintiff's termination was already known to many in plaintiff's industry). Rule 26 confers broad discretion upon the trial court to resolve discovery disputes. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).

The first issue the Court addresses is the relevance of the information sought to the parties' claims and defenses. To prove a claim of disability discrimination based on a failure to accommodate under state and city law, a plaintiff must demonstrate: (1) he has a "disability" within the meaning of the applicable statute, (2) the employer had notice of the disability, (3) he or she was otherwise qualified to perform the essential functions of his or her job with or without a reasonable accommodation, and (4) the employer refused to make a reasonable accommodation. *Best v. Drugs*, No. 14-CV-2648 (CM), 2017 WL 218251, at *3 (S.D.N.Y. Jan. 11, 2017), *aff'd sub nom. Best v. Duane Reade, Inc.*, 715 F. App'x 95 (2d Cir. 2018); *see also Hernandez v. International Shoppes*, LLC, 100 F. Supp.3d 232, 252-255 (E.D.N.Y. 2015)*; Romanello v. Intesa Sanpaolo S.p.A.,* 949 N.Y.S.2d 345, 352–53 (2012), *aff'd as modified*, 22 N.Y.3d 881 (2013). The law requires employers to engage in a good faith interactive process upon notice of the need for an accommodation. *Romanello*, 949 N.Y.S.2d at 354-55. The burdens of proof differ under State and City law. Under the City law, the burden is on the employer to demonstrate that a requested accommodation would pose an undue hardship and therefore need not be provided. *Romanello*

*v. Intesa Sanpaolo S.p.A.*, 976 N.Y.S.2d 426 at 428-29.  Under the City law, the employer also bears the burden of proving "'that the employee could not, with reasonable accommodation, satisfy the essential requisites of the job." *Boncimino v. New York State Unified Court Sys.*, No. 17-CV-6760 (VSB), 2018 WL 2225004, at *11 (S.D.N.Y. May 15, 2018) (quoting *Romanello*, 976 N.Y.S.2d at 429).  Importantly, Defendants do not appear to dispute that Plaintiff had a disability.  Rather, they argue that Plaintiff could not meet the requirements of his job with the accommodations requested or any other reasonable accommodation.

Whether a certain accommodation is reasonable is a fact-specific inquiry that must be made on a case-by-case basis.  Courts look at, among other things, the size of the employer, the nature and costs of the accommodation, the duration of the proposed accommodation (i.e., whether it is temporary or permanent), the type of location and facility, the availability of other less costly but effective accommodations, the impact of the accommodation (if any) on other employees and the operations of the facility, and the overall resources of the employer in terms of number of employees and accommodation. *See* N.Y. Comp. Codes R & Regs. tit. 9, § 466.11(b); New York City Admin. Code § 8-102.  Types of accommodation vary widely and can include, among other things, provision of seating, job modification, permanent or temporary job restructuring, and an extension of a leave of absence; though an accommodation that may be reasonable for one person, employer, and job may not be reasonable for another person, employer and/or job.  *See Back Impairment*, Job Accommodation Network, https://askjan.org/disabilities/Back-Impairment.cfm (last visited May 30, 2019) (listing various accommodations for a range of disabilities including back impairments).  Therefore, information about restrictions and/or accommodations made by other employers of Plaintiff for other

positions shed little light on whether the accommodations Plaintiff requested at NYU were necessary and reasonable in light of the facts and circumstances of his specific job duties at NYU. This is particularly so with respect to OLLMC and RUMC because Plaintiff performed a completely different job at those medical centers than the one he performed at NYU. Most importantly, Plaintiff did not (and does not) perform general and advanced endoscopies at OLLMC or RUMC—the procedures he performed at NYU for which he sought accommodations.

Defendants argue they need records about pre-employment medical exam results and accommodations considered and rejected by OLLMC and RUMC to determine how Plaintiffs job duties there differed from his duties at NYU such that he was/is able to work there. But, Plaintiff already was deposed and testified about his job duties at RUMC and OLLMC and it is evident that both entities found Plaintiff to be physically qualified to perform. Thus, Defendants already obtained the information sought and there is no need to separately subpoena this information from RUMC and OLLMC. The heightened concerns about the impacts of a subpoena on Plaintiff's current employment further bolster this Court's conclusions about the proposed RUMC subpoena. Although Plaintiff no longer works at OLLMC, Plaintiff argues that he works in a small medical specialty and that subpoenas could have a broader impact on his reputation in the specialty and potential future applications for employment at places other than RUMC. The Court recognizes these valid concerns and finds they also bolster the Court's conclusions about the proposed OLLMC subpoena.

In contrast to his jobs at OLLMC and RUMC, the position Plaintiff was offered by Wycoff was substantially similar to the job Plaintiff held at NYU. Additionally, Plaintiff requested the same accommodations from Wyckoff that he requested from NYU. The relevance standard for

discovery is broad. *See, e.g., Villella v. Chemical & Mining Co. of Chile Inc.,* 15-cv-2016, 2019 WL 171987, *2-3, (S.D.N.Y. Jan. 11, 2019); *New York v. United States Department of Commerce*, 18-cv-2921 & 5025, 2018 WL 5260467, *1 (S.D.N.Y. Aug. 17, 2018). Additionally, this Court has broad discretion in determining relevance for discovery purposes. *Williams v. Rosenblatt Sec.*, Inc., 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017); *In re Air Crash Near Clarence Center, New York, on February 12, 2009*, 277 F.R.D. 251, 253 (W.D.N.Y. 2011). Thus, this Court finds that information from Wyckoff concerning Plaintiff's request for accommodation and Wyckoff's evaluation of that request in deciding to offer or withdraw its employment offer could be relevant to and possibly support NYU's argument that Plaintiff's requested accommodations were not reasonable given the nature of the job. Similarly, given the close temporal proximity of Plaintiff's departure from NYU, any pre-hire medical exam Wycoff conducted evaluating conditions for which Plaintiff sought accommodation, the limitations they imposed on Plaintiff, Plaintiff's representations about his limitations, and the extent to which the requested accommodations addressed those limitations are relevant because they bear on Plaintiff's medical conditions and limitations at or near the time he requested accommodations from NYU, including whether they were disqualifying. The Court also notes that Plaintiff is not currently employed and never was employed by Wyckoff, and, as such, concerns about adverse effects of a subpoena are lower than for a current employer such as RUMC. And, unlike the information he was able to provide about his employment at RUMC and OLLCM, the information sought by NYU is not in Plaintiff's possession.

Plaintiff points out that the needs and staffing composition of hospitals vary and, as such, obtaining the reasons why one hospital may or may not have hired Plaintiff far exceeds the

9

proportionality rules that govern discovery. The Court appreciates and has taken into account this argument but finds that the narrowly tailored subpoena to Wyckoff is not disproportionate to the needs of this case given the potential relevance of the information, the minimal cost associated with the document subpoena on Wyckoff, and other factors set forth in Rule 26(b)(1). Thus, the Court will grant Defendants' request to issue a subpoena to Wyckoff for the topics listed herein. Other topics mentioned by Defendants in their letter motion are irrelevant to Wyckoff and/or have been addressed through testimony and documents provided by Plaintiff and should not be included in the subpoena.

Given this Court's decision, the award of attorneys' fees and costs incurred in connection with the instant dispute is not warranted.

## Conclusion

For the reasons discussed above, Defendants may serve a subpoena on Wyckoff consistent with the above. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 51.

**SO ORDERED.**

Dated: June 3, 2019
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge